# STRAFFORD,

## JANUARY TERM, A. D. 1850.

### The State *v.* Thompson.

A justice of the peace throughout the State may, upon a complaint for an assault, made before him in the county of Rockingham, order the respondent to recognize for his appearance at the Court of Common Pleas for the county of Strafford; as the proceedings do not constitute a *trial*, within the meaning of the 17th article of the Bill of Rights.

An indictment for assault and battery, found in the Court of Common Pleas, need not allege that there has been a preliminary examination for the offence, before a justice of the peace.

A complaint was made against a person by the name of Cahew, his name being Cahill; but as he appeared and answered without objection to the name of Cahew, having been arrested by that name, it was *held*, that it was too late to take the exception on the trial.

The complainant purchased a ticket of the Boston and Maine Railroad corporation, as a passenger from Dover to Exeter. On the way the conductor asked him to deliver up his ticket, but did not offer him any check, and he refused to give up his ticket or to leave the cars. The conductor and another person then forcibly ejected him from the cars. Upon a complaint against the conductor for an assault, it was *held*, that the complainant was not bound to surrender his ticket without a check being tendered him, to enable him to show that he had paid his fare.

Indictment, charging that the respondents, on the 18th of November, 1848, with force, &c., made a violent and unlawful assault upon one John B. Hill, and beat, bruised and ill-treated him, and pushed, kicked, pulled and threw him on the ground, &c., contrary, &c., against, &c. The respondents severally pleaded not guilty.

The State's counsel offered in evidence a complaint, warrant, record of examination, and order upon the respond-

State *v.* Thompson.

ents to recognize for their appearance at this court.   These proceedings appeared to be had before I. B. Hoitt, Esq., a justice of the peace throughout the State, at Exeter, in the county of Rockingham.   The counsel for the respondents objected to the admission of these papers, because, by the 17th article of the Bill of Rights, a justice of the peace can have no authority to try any case except within the county where the offence is alleged to be committed; and because the complaint in this case was against E. C. Thompson and Michael Cahew.   But it being shown that the respondents were the parties then arrested, and that they answered without objecting to the names, the court overruled these exceptions.

The counsel for the respondents then moved that the indictment be quashed, because there was no allegation in it that there had been a preliminary examination before a justice of the peace; but the court denied the motion.

Evidence was then introduced on the part of the State to show that John B. Hill purchased a ticket at the depot of the Boston and Maine Railroad, at Dover, for Exeter, and took his seat in the car; that soon after the train started from the depot, the respondent Thompson, who was the conductor in charge of the train, came into the car and commenced taking the tickets of the passengers; that when he came to Hill, Hill showed his ticket, but declined to give it up to the conductor, saying that there had been difficulty from giving up the tickets, and that he would give up his before he got to Exeter.   The conductor insisted that he must give up his ticket or leave the cars; that was the usage upon the road.   After taking the tickets of the other passengers, the conductor returned to Hill, and again asked if he would give up his ticket, which Hill declined as before, and Thompson repeated he must give up his ticket or leave the cars.   It did not appear that any check was offered to Hill.   At the Madbury depot the train was stopped, and the said Hill was forcibly,

and, as the evidence for the State was, violently thrust out of the cars by the conductor and Cahill, a baggage-master, who acted under the direction of the conductor.

The respondents did not deny that they had ejected the said Hill by force from the cars, but rested their defence upon two points: First: That by the direction of the superintendent of the railroad, who had the charge of this department of their business, a general regulation was established for all the conductors on the road, and universally adopted by them, to take from the passengers their tickets, as soon as practicable after leaving the stations where they got into the cars, or pay for their fares if they have no tickets, and that if any one did not give up his ticket or pay his fare, he should be put out of the cars as soon as convenient. Second: That Hill was ejected from the cars, because he did not, when requested, give up his ticket or pay his fare; that he was notified of the usage on the road, and requested or notified to leave; and that, on his resisting, no other or greater force was used than was reasonable and necessary to overcome his resistance and put him out.

The judge being desired to rule whether the regulation set up by the respondents was any justification, with a view that the jury might have an opportunity to pass upon the question, whether there had been an excess of force, stated, that for the purpose of the trial he would rule that the regulation was reasonable and proper, and such as the passengers were bound to yield to. Evidence being then introduced on the part of the respondents to show the circumstances, the jury were instructed that the regulations of the railroad were reasonable and proper, and the respondents were justified, if, before force was used, Hill was requested or notified to leave the cars, and did not; and if no other or greater force was used than was necessary to overcome his resistance and put him out of the cars.

The jury found a verdict for the respondents upon the question submitted to them, and the attorney-general excepted to the ruling and instructions of the judge, and moved for a new trial for that cause.

The parties assented that if the Superior Court should be of opinion that the several rulings of the court here, in relation to the preliminary examination, are wrong, or the instructions to the jury relative to the regulations of the railroad are right, judgment is to be rendered on the verdict for the respondents; otherwise the verdict is to be set aside, and judgment rendered against the respondents, upon a plea of *nolo contendere* to be entered by them.

*Sullivan,* attorney-general, for the State.

*Wiggins* and *J. S. Wells,* for the respondents.

GILCHRIST, C. J. The first objection by the defendant arises under the seventeenth article of the Bill of Rights. By that it is declared that the trial of facts in the vicinity where they happen, is so essential to the security of the life, liberty, and estate of the citizen, that no crime or offence ought to be tried in any other county than that in which it is committed, except in cases of general insurrection, in relation to which the legislature may direct a trial in the nearest county.

A more extended experience than our ancestors possessed has shown that a trial of a case by a jury of the vicinage is not always the surest mode of demonstrating the guilt or the innocence of the accused. Prejudices against a person or prepossessions in his favor are carefully to be guarded against in the trial of offences, and these are more likely to exist in the vicinity where a person is known, than in a part of the county where he is a stranger. But the general correctness of this section is not in question. It was by a *jury* of the vicinage that the common

law declared a person should be tried, upon the ground, that, coming from the neighborhood of the accused, they would be more likely to be acquainted with the facts than people from a distance. 3 Bl. Com. 359. In this case the examination was had before a justice of the peace throughout the State, in the county of Rockingham; and it is alleged that such an examination is a trial of the character referred to in the Bill of Rights; the offence having been committed out of that county. By Rev. Stat. 450, sec. 17, such justice may receive a complaint, issue his warrant, and cause the offender to be brought before himself, or some justice for the county where the offence was committed, for examination. In this case he was brought before the justice for examination. He was not fined, but was bound over. What was done then came within the letter of the statute, and we are of opinion that the statute does not conflict with the seventeenth article of the Bill of Rights. That, as has been remarked, originated in the idea that a jury ought to be returned from the vicinage. The inconveniences of this law were so apparent, that from the time of Edward III. the practice was gradually relinquished, until, by the act of 24 Geo. II., ch. 18, the jurors were to be returned only from the body of the county. But we have preserved the word " vicinity," or vicinage, which is synonymous from the ancient common law; but we do not find that the principle has ever been applied to any trials but those by jury. Other safeguards existed for a proper trial by the justice, which it was supposed were sufficient without this. And we do not feel called upon to say that the legislature may not confer this power of a preliminary examination upon justices, especially when such a decision would render invalid the powers conferred upon justices in cases where the respondent is a fugitive from justice, or is charged under the bastardy act. See Rev. Stat., chapters 68 and 122. And our impression is, that even if the respondents had been tried and fined by

State *v.* Thompson.

the justice in this case, he would be authorized in so doing for the reasons above stated. This exception must, therefore, be overruled.

The complaint was against Cahew, but the respondent Cahill appeared and answered without objection, and the court were right in overruling the exception.

It is not necessary that the indictment should allege that there had been a preliminary examination before a justice. It is no part of the offence charged, which is complete without it. We have held that an indictment for an assault and battery cannot be sustained unless there has been such an examination and a binding over. The proper mode of proving this is a matter of practice, and the evidence should be addressed to the court. The object of the law requiring such a decision probably was that cases of trivial consequence should not come before the grand jury, and that some evidence should be furnished the court that the case before them was one proper for a trial by jury in the first instance; but the finding of the indictment may properly enough be considered as *prima facie* evidence that all necessary preliminary steps have been taken. If the respondent wishes to raise the question, he must, before his plea, move that the indictment be dismissed for this cause. He should not lie by until after his plea, which is a notice to the prosecuting officer that he means to try his case, and then raise the question. This motion to the court will be regarded as throwing the burden upon the prosecuting officer of proving that the examination has been had. If no motion is made, we regard the question as waived. As the evidence was offered in this case, it was enough without any allegation in the indictment, as it is merely a part of the proceeding, and is no part of the offence. The motion to quash the indictment for this cause was properly denied.

As to the remaining question, there is no doubt that railroad corporations may make reasonable and proper

regulations concerning the payment of fares and tickets to passengers. Whether the regulation were such an one is the question. It does not appear that when the conductor demanded Hill's ticket, he offered him a check in its place. By delivering up his ticket he would have nothing to trust to but the memory of the conductor to show that he had paid his fare from Exeter to Dover, and that he did not get into the cars at some intermediate station between those two places. If the conductor should forget him, and forget that he had delivered up his ticket, he might, after passing the Madbury station, again call upon him for his fare. The passenger would have no evidence that it was paid, and might be ejected from the cars for non-payment, or submit to the imposition of paying his fare twice. This rule that the tickets for whatever remote point, and however numerous may be the intermediate stations, shall be surrendered without a check, immediately after entering the cars, may be very convenient for the corporation, but it is extremely liable to be made the instrument of abuse towards the travelers. It is evident that the surrender of a ticket for a passage over a route covered by several distinct corporations, may cause great injustice. The conductors, however well disposed to do their duty, and to treat the persons who intrust themselves to their charge, with justice, cannot always in the hurry of business and the multiplicity of passengers, remember all who have delivered up their tickets. Where a man has yielded his ticket for the convenience of the corporation, he ought not to be placed in the dilemma of paying again for his passage, or being ejected from the cars. For these reasons we are of opinion that the verdict should be set aside, and that judgment should be rendered against the respondents, according to the provisions of the case.